UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICHARD E. KAPLAN )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>FIRST HARTFORD CORPORATION, )<br>and NEIL ELLIS )<br>)<br>Defendants ) | Docket No. 05-144-B-H |

**FIFTH REPORT OF SPECIAL MASTER**

George J. Marcus, the Special Master appointed in this case pursuant to Orders of the United States District Court for the District of Maine, dated June 16, 2009 (the "June 16, 2009 Order") and June 1, 2010 (appointing the undersigned as Standing Special Master), hereby submits this Fifth Report of Special Master.

I. Introduction

The undersigned was appointed as Special Master pursuant to the provisions of Rule 53 of the Federal Rules of Civil Procedure. Subsection (g)(3) of that Rule deals with the allocation of responsibility for the fees and expenses of a Special Master appointed under the Rule. In the June 16, 2009 Order, the Court determined that the allocation of such responsibility would be in equal, 1/3 shares among the Plaintiff, Richard E. Kaplan ("Mr. Kaplan"), and the two Defendants, FHC Corporation ("FHC") and Neil Ellis ("Mr. Ellis"), with the proviso that a different allocation could be made if the conduct of a party "has caused the Special Master's efforts to be more extensive or expensive than necessary".

By the Court's order of November 23, 2009, the undersigned was charged with the task of determining the precise number of shares to be made subject to the Court

ordered Buy-out, in the event that the parties were unable to agree.  They were not able to agree and the undersigned set out to make the required determination.  At an initial conference of the undersigned and counsel on this subject held on December 16, 2009, Mr. Kaplan requested that the fees and expenses of the Special Master, insofar as they pertain to the determination of the number of shares subject to the Court ordered Buy-Out, be allocated in their entirety to the Defendants.  That request has been renewed and submitted to me for decision.  The Defendants object.  The parties have submitted memoranda in support of their respective positions[1].

By previous communication to the parties, the undersigned calculated that $4,780.48 of fees and expenses incurred by him as Special Master were incurred in connection with the determination of the number of shares covered by the Buy-Out[2].  In their submissions on this issue, no party has objected to this calculation, so for the purpose of this Report, I treat this as the amount of fees and expenses to be allocated.  If the original allocation rules established by the Court in the June 16, 2009 Order were followed, the allocation would be $1,593.49 for each of Mr. Kaplan, FHC, and Mr. Ellis.

Mr. Kaplan asks that FHC and Mr. Ellis bear all of this expense, while FHC and Mr. Ellis decline and maintain that this expense should be assessed in accordance with the allocation rules established by the Court in its June 16, 2009 Order.  This Fifth Report addresses Mr. Kaplan's request and FHC's and Mr. Ellis' opposition.  As set forth below, I recommend and order that the entirety of the subject fees and expenses be allocated to

---

[1] Mr. Kaplan submitted his Request for Reallocation of fees on October 26, 2010 (a copy is attached hereto as Exhibit A). FHC and Mr. Ellis submitted a Memorandum in response on November 5, 2010 (a copy of the same is attached hereto as Exhibit B).

[2] Attached hereto is Exhibit C, consisting of my invoice for services as special master for the period October 1, 2009 through October 31, 2010.  The time entries for the following dates comprise the total of fees for services in respect of the determination of the number of shares subject to Buy-out:  December 16, 2009, December 17, 2009, January 15, 2010, February 16, 2010, February 18, 2010, February 25, 2010, March 1, 2010, May 4, 2010.  Disbursements attributable to the same were $20.48.  The total of fees and disbursements is, as stated, $4780.48.

and paid by FHC and Mr. Ellis, with the latter having secondary, i.e. guaranty liability for the payment of the same.

II. Discussion

There are three sets of rules that appear to be applicable in allocating the subject fees and expenses. First, Rule 53(g)(3) states that

> "The court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master"

Second, the District Court set a rule for allocation in the June 16, 2009 Order, and this calls for equal, 1/3 sharing of the subject fees and expenses, unless one party or another "has caused the Special Master's efforts to be more extensive or expensive than necessary"

Third, there is First Circuit precedent that must be considered, and reference is made to the case of *Teradyne, Inc. v. Teledyne Industries, et. al.,* 676 F.2d 865 (1st Cir. 1982). In that case, the First Circuit treated the fees of a special master as "costs" to be assessed under Rule 54(d) (on this point, the Court quoted with approval the decision of the Seventh Circuit Court of Appeals in *Popeil Brothers, Inc. v. Schick Electric, Inc.,* 516 F.2d 772, 774 (7th Cir. 1975), and held that allocation of such costs to a prevailing party would, absent some adequate cause, constitute an abuse of discretion. Thus, the Court stated

> "Generally it is an abuse of discretion for a district court without cause to charge the prevailing party the costs of the reference to a master". *Id.* at 871

The First Circuit did provide that the District Court could exercise discretion in varying the presumptive rule, but it nevertheless appears that the presumption is a strong one, not easily overcome. Several circuits have adopted a similar rule, treating special

3

master costs as costs to be assessed to the non-prevailing party under Rule 54(d); *See* 9-53 Moore's Federal Practice - Civil § 53.52[4].

These three sets of rules, if examined in isolation, might call for different outcomes in this case, but under the present circumstances, they can be reconciled. I interpret the allocation set forth by the District Court in its June 16, 2009 Order, to constitute the Court's preliminary, or provisional, allocation under Rule 53(g)(3). Such provisional allocations were specifically recognized as appropriate by the First Circuit in *Teradyne.* Further, in my view, the Court's provisional allocation rule did not run counter to the admonition of the First Circuit that prevailing parties should ordinarily not be assessed with costs of a special master absent due cause. When the Special Master was appointed, the Court had already ruled on the merits of the case. The Special Master was appointed to recommend the means for implementation of the Court's rulings. This task did not lend itself to a definitive or simple determination of a "prevailing party". To be sure, in proceedings before me, the parties advocated opposing positions on a variety of matters, but my responsibility was not to choose a "winner", but to find a reasonable balance with respect to competing, and usually justifiable, views of commercial realities. In these circumstances, I would be hard pressed to treat any party as a "prevailing" party, and an equal sharing of fees and costs appears to be entirely consistent with applicable precedent. The same can be said with respect to my subsequent efforts to devise the package of loan closing documents.

Nevertheless, on the issue regarding the determination of shares subject to the Buy-out, I consider it appropriate to treat this issue as a discrete matter submitted to the Special Master. My authority to determine the number of shares subject to the Buy-out arose under a separate order of the Court, specifically its Order dated November 23,

4

2009, which approved, subject to modification, my original Report on the matters submitted to me in the June 16, 2009 Order.  As a discrete matter, it is possible to identify a prevailing party, and that is Mr. Kaplan.  Following the *Teradyne* rule, Mr. Kaplan should not be assessed any of the costs of the Special Master in respect of the determination of shares subject to the Buy-out, unless there are countervailing circumstances, but in this discrete matter, I see none.  As such, following *Teradyne,* I treat the initial allocation set by the Court in the June 16, 2009 Order as provisional, and allocate the Special Master's fees and expenses regarding the determination of the number of shares subject to the Buy-out to FHC in their entirety.   As such, FHC shall pay such fees and expenses as a cost, within the meaning of Rule 54(d)[3].

Finally, I have assessed primary responsibility for payment of all of the subject fees and expenses to FHC.  FHC is the buyer of the shares, and has the primary and direct interest in the number of shares that it would be obligated to buy.  Mr. Ellis has only a secondary and contingent interest as a guarantor.  As such, I believe there is cause not to assess primary responsibility to Mr. Ellis, personally.   As a guarantor of FHC's obligations, Mr. Ellis did have a stake in the matter, and did participate in the share determination proceedings, however, consistent with Mr. Ellis' guaranty liability for the Buy-out, his stake was secondary.  As such, I believe it is appropriate to treat FHC's obligation to pay all of the subject fees and costs as the primary obligation, and Mr. Ellis' obligations as a secondary or guaranty obligation.  Thus, if FHC shall fail, in a timely

---

[3] Mr. Kaplan, in his submission, urges me to find "cause" to assess all of the subject costs to FHC and Mr. Ellis, but I find it unnecessary to determine such cause in view of my application of the *Teradyne* rule. Moreover, I would be disinclined to find such cause in any event. I do not believe that FHC's and Mr. Ellis' position on the share issue can fairly be characterized as "vexatious", so as to warrant variance from the equal sharing rule provisionally established by this Court. In large part, FHC and Mr. Ellis pursued the matter because I permitted them to do so, based upon my incorrect interpretation of the Court's prior orders regarding share determination.

manner, to pay the entirety of the subject fees and expenses as a cost assessed under rule 54(d), Mr. Ellis shall be liable to do so.

Dated: November 12, 2010

Respectfully submitted,

/s/George J. Marcus
George J. Marcus

**CERTIFICATE OF SERVICE**

I, Jean M. Dunphy, hereby certify that I am over eighteen years old and caused a true and correct copy of the above document to be served electronically upon the parties and at the addresses set forth below on the 12th day of November, 2010.

/s/ Jean M. Dunphy
Jean M. Dunphy
Legal Assistant

# Mailing Information for a Case 1:05-cv-00144-DBH

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **NICOLE L. BRADICK**
  nbradick@mpmlaw.com,dms@mpmlaw.com
- **PETER W. CULLEY**
  pculley@pierceatwood.com,mclifford@pierceatwood.com
- **JOSEPH H. GROFF , III**
  jgroff@jbgh.com,jhall@jbgh.com
- **LARRY C. KENNA**
  lck@choate.com
- **GEORGE J MARCUS**
  federalcourt@mcm-law.com
- **GAVIN G. MCCARTHY**
  gmccarthy@pierceatwood.com,wjoneil@pierceatwood.com
- **THOMAS C. NEWMAN**
  tnewman@mpmlaw.com,mmcardle@mpmlaw.com,npelletier@mpmlaw.com,tnewman@maine.rr.com
- **JOHN B. NOLAN**
  jbnolan@DayPitney.com
- **RUSSELL PIERCE**
  rpierce@nhdlaw.com
- **ROBERT ROTHBERG**
  RRothberg@choate.com
- **ERIC W. WODLINGER**
  ewodlinger@rackemann.com

### Manual Notice List
The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.
- `(No manual recipients)`